UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Michael R.,                                              Case No. 18-cv-241-NEB-KMM

        Plaintiff,

v.                                                       REPORT AND RECOMMENDATION

Nancy A. Berryhill,

        Defendant.

---

This matter is before the Court on the parties' cross-motions for summary judgment filed by Michael R. and the Commissioner of the Social Security Administration. [Pl.'s Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 9; Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 12.] For the reasons set forth below, the Court recommends that Michael R.'s motion for summary judgment be denied and the Commissioner's motion be granted.

## I.    Procedural History and Factual Background[1]

Mr. R filed an application for disability benefits with the Social Security Administration ("SSA") on August 2, 2013, when he was approximately 62 years old. [Admin. R. ("R.") at 263–65, ECF No. 8.] He alleged that he became unable to work on January 1, 2013 as a result of several impairments: (1) Type 2 diabetes; (2) severe sleep apnea; (3) arthritis; (4) nerve damage; (5) lower back pain; (6) hip problems; and (7) being overweight. [R. 331.] Before he stopped working, held a variety of jobs. He had worked as a buyer, a mortgage consultant, a sales associate at a hardware store, a property manager for a storage company, a salesman for a furniture company, a cashier, and a car salesman. [R. 332, 341–48.] In a function report submitted shortly after he applied, Mr. R also noted that he experienced depression, was on pain medication, and had trouble concentrating. [R. 353, 357.]

---

[1]     Mr. R's challenge in this suit focuses on the SSA's consideration of his mental-health issues, so this background and discussion primarily explores those matters.

The SSA denied Mr. R's application initially and again when he requested reconsideration. [R. 87–100 (initial decision), 101–15 (reconsideration decision).] At the initial phase, a medical records reviewer concluded that the evidence provided "suggests a nonsevere mental impairment." [R. 94.] Another reviewer agreed with that determination at the reconsideration level and further noted that there was no new evidence of treatment, nor an indication of prescribed medications, for Michael R.'s mental-health condition. [R. 108–09.] Both reviewers also considered whether Mr. R had any limitations attributable to a substance use disorder and concluded he did not. [R. 94, 108–09.]

Mr. R requested a hearing before an administrative law judge ("ALJ"), which was held on August 11, 2015. [R. 32–57.] After that hearing, ALJ Roger W. Thomas issued a written decision denying Mr. R's claim. [R. 119–29.] Applying the five-step sequential analysis mandated by the SSA's regulations, ALJ Thomas determined that Mr. R has several severe impairments, including:

> diabetes mellitus complicated by peripheral neuropathy in the upper and lower extremities; obstructive sleep apnea; low back pain with lumber spondylosis with a history of decompression at L4-5; right hip pain attributed to bursitis; mild osteomyelitis, and osteoarthritis; carpal tunnel syndrome; a history of right ankle sprain and chronic synovitis with surgical intervention; rheumatoid arthritis; and alcohol abuse.

[R. 121–22.] AJL Thomas found that depression was not a severe impairment because it did not cause more than minimal limitation in Mr. R's ability to perform basic work activities. [R. 122.] The ALJ next determined that Michael R. did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. [R. 123–24.] The ALJ then determined Mr. R's residual functional capacity ("RFC"), which is the most a person can do physically and mentally in light of the limitations caused by his or her impairments. [R. 124–28.] Mr. R was found to have the ability to do sedentary work[2] with additional restrictions on: using foot controls; climbing stairs, ramps, ropes,

---

[2]   Within the meaning of the applicable regulations, sedentary work includes significant limits on lifting and carrying objects and long periods of sitting with walking and standing only as needed to do the job. 20 C.F.R. § 416.967(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying

ladders and scaffolds; working overhead with either arm; using the hands; being exposed to cold temperatures or hazards, like dangerous heights or machines. [R. 124.] Because this RFC did not prevent Mr. R from doing his past relevant work as a sales associate or loan officer, ALJ Thomas found that Mr. R was not under a disability between January 1, 2013 and September 2, 2015 (the date of the decision). [R. 128–29.]

However, when Michael R. appealed, the Appeals Council reversed the ALJ's decision and remanded for additional proceedings. [R. 136–40.] In particular, the Appeals Council noted that ALJ Thomas found that Mr. R's alcohol abuse is a severe impairment, but the decision did not consider non-exertional mental limitations. [R. 137.] The Appeals Council found that "[i]t is unclear whether the alcohol abuse would result in functional limitations that would preclude the claimant from performing his past relevant work as this was not evaluated in the decision." [R. 137.] The Appeals Council also instructed the ALJ on remand to enter evidence into the record that had been submitted by Mr. R on August 31, 2015. [R. 137–38.] The Appeals Council gave the ALJ a list of instructions to follow on remand. [R. 138–40.]

Following remand, the ALJ scheduled a second hearing for December 14, 2016. [R. 223–44.] Mr. R again testified in support of his own claim, and ALJ Thomas also heard testimony from both Dr. Michael Lace, a neutral medical expert, who reviewed Mr. R's medical records, and Steven Russell, a vocational expert. [R. 58–86.] Mr. R testified that he had no problems with driving under the influence of alcohol and did not think his drinking had been a problem or caused more limitations than he would otherwise experience. [R. 64, 71.] He stated that he had not participated in any prior treatment for chemical dependency. Mr. R explained that notes in his record indicating that he was unwilling to completely stop drinking reflected that he had never been told to quit drinking by a medical provider, only to avoid drinking while taking opiate pain medication. [R. 70–71.] With regard to his symptoms of depression, Mr. R also testified that he had been taking Zoloft but his treating physician had not referred him to a counselor or psychiatrist. [*See* R. 72–73.]

---

articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.").

3

Dr. Lace testified that there were records in the file that would support finding that Mr. R has a major depressive order; other records suggested "a dysthymic disorder, adult onset versus a mood disorder due to a medical condition"; and "a rule out for alcohol abuse." [R. 74.] Further, Dr. Lace explained that there was "[n]o evidence of ongoing intensive targeted psychotherapy or interventions outside of some mild psychotropics," and that "[t]here's not a lot … with regard to severity, particularly because there's not a lot of contact with mental health practitioners to begin with." [R. 74–75.] Dr. Lace thought that the mental health records supported only mild limitations for Michael R.'s abilities to remember and apply information, interact with others, concentrate, persist, and maintain pace, and adapt and manage himself. [R. 75.]

ALJ Thomas asked the vocational expert a hypothetical question about an individual who could do a job with the same RFC restrictions from ALJ's first decision. [R. 78–80.] Mr. Russell testified that an individual with that RFC could still perform Michael R.'s past relevant work as a loan officer and a cashier. [R. 80.] However, Mr. Russell confirmed that if the same hypothetical individual could not handle more stress than one would find in an entry-level workplace, then he could not perform Michael R.'s past work as a loan officer or cashier. [R. 84.]

After the second hearing concluded, ALJ Thomas issued a new decision on January 10, 2017, denying Michael R.'s disability application again. [R. 10–23.] In considering the list of Mr. R's severe impairments, the ALJ's decision was nearly identical. However, in the second decision, ALJ Thomas found that Mr. R's substance use disorder did not qualify as a severe impairment. [R. 13–15.] The ALJ also found that Mr. R's depression was not a severe impairment. [R. 13–15.] In explaining these decisions, the ALJ discussed Mr. R's history of alcohol use and his mental-health diagnoses for major depressive disorder and dysthymic disorder. Based on the evidence in the record, ALJ Thomas found that that neither caused more than a minimal impact on Michael R.'s ability to perform basic work activities. [R. 13–15.] The ALJ noted the absence of significant treatment for both substance use and depression. [R. 14.] The ALJ again found that none of Michael R.'s impairments or combinations of impairments equaled any of the listings and assigned the same RFC adopted in the first decision. [R. 15–22.] Based on Mr. Russell's testimony, ALJ Thomas found that Mr. R is capable

of performing his past relevant work as a loan officer or cashier, and was, therefore, not disabled. [R. 22–23.]

Mr. R requested review of ALJ Thomas's January 2017 decision from the Appeals Council, arguing that "[t]he ALJ's decision is not based on the substantial evidence of the record as a whole." [R. 259–60.] On November 29, 2017, the Appeals Council informed Mr. R that it had denied his request for review because it "found no reason under our rules to review the [ALJ's] decision." [R. 1.] This lawsuit followed, and both sides now move for summary judgment. [Pl.'s Mot., ECF No. 9; Def.'s Mot., ECF No. 12.]

## II.   Analysis

In reviewing the Commissioner's denial of Michael R.'s application for benefits the Court determines whether the decision is supported by "substantial evidence on the record as a whole" or results from an error of law. *Gann v. Berryhill*, 864 F.3d 947, 950 (8th Cir. 2017); *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance of the evidence, but is such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotation marks omitted). The Court considers not only the evidence supporting the Commissioner's decision, but also the evidence in the record that "fairly detracts from that decision." *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). However, the Court will not reverse the Commissioner's decision merely because substantial evidence might also support a different conclusion. *Gann*, 864 F.3d at 950; *Reed*, 399 F.3d at 920. The Court should reverse the Commissioner's decision only where it falls outside "the available zone of choice," meaning that the Commissioner's decision is not among the reasonable conclusions that can be drawn from the evidence in the record. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

Michael R. asserts three reasons why the ALJ's decision should be reversed. First, Mr. R argues that ALJ Thomas failed to follow the instructions given by the Appeals Council to further evaluate his alcohol abuse impairment. [Pl.'s Mem. at 21–22.] Second, Mr. R argues that the RFC determination is not supported by substantial

5

evidence because the ALJ failed to include any mental restrictions in it. [*Id.* at 26–30.] Finally, Mr. R argues that the ALJ erred in evaluating evidence concerning the severity of his mental-health symptoms. [*Id.* at 22–26.] The Commissioner argues that the ALJ's decision following remand complied with the direction of the Appeals Council and was supported by substantial evidence. [Def.'s Mem. at 6–23, ECF No. 13.] For the reasons that follow, the Court concludes that ALJ Thomas did not err in denying Mr. R's disability claim and the decision was supported by substantial evidence on the as a whole.

### A.    Compliance with Appeals Council's Remand

The Social Security regulations provide that when a case is remanded "[t]he administrative law judge shall take any action that is ordered by the Appeals Council and may take[] any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). Mr. R argues that ALJ Thomas's second decision should be reversed because he did not follow the remand order in this case. [Pl.'s Mem. at 21–22.] Specifically, he argues that ALJ Thomas "did very little to further develop the issue of alcohol use" and "ignored a significant amount of evidence on this issue...." [*Id.*] The Commissioner argues that the issue of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review. [Def.'s Mem. at 5–6.] As discussed below, there is no binding authority that resolves whether an ALJ's compliance with the Appeals Council's remand order is subject to judicial review, and the persuasive caselaw is inconclusive. However, it is unnecessary to answer that question definitively here because ALJ Thomas's post-remand actions satisfied the remand requirements.

### Reviewability of Compliance with Remand Order

Neither Mr. R nor the Commissioner cites a decision from the Supreme Court or the Eighth Circuit that considers whether an ALJ's compliance with a remand order is subject to judicial review, and the Court's own research has failed to locate any binding precedent. Several district courts have concluded that the issue is not subject to judicial

review.[3] Essentially, these courts reason that when the Appeals Council remands a case with instructions to an ALJ and the ALJ issues a second unfavorable decision, the claimant can request review of the ALJ's second decision. When the Appeals Council decides not to engage in further review, the implication is that the ALJ's second decision complied with the remand order. *Sanders*, 2013 WL 1282330, at *11. In contrast, other courts have held that an "ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand."[4] These cases do not explain the reasoning for this conclusion, but instead rely upon the SSA's own regulation that instructs an ALJ to take actions specifically required in the remand order and authorizes the ALJ to take any other actions that are not inconsistent with the Appeals Council's decision. 20 C.F.R. § 404.977(b).

In this case, it is unnecessary to resolve the disagreement reflected in these decisions because, as shown below, ALJ Thomas complied with the Appeals Council's remand order. Regardless of whether noncompliance with a remand order can, as a matter of law, be an independent basis for relief from this Court, in this case the ALJ's compliance with that order survives judicial scrutiny.

---

[3]     *See Vanepps v. Comm'r of Soc. Sec.*, No. C18-5-LTS, 2019 WL 1239857, at *7 (N.D. Iowa Mar. 18, 2019) (explaining that because judicial review in a Social Security disability case is limited to "whether substantial evidence supports the Commissioner's decision and whether that decision comports with relevant legal standards, the question of whether the ALJ complied with the Appeals Council's remand order is not subject to judicial review"); *Sanders v. Astrue*, No. 4:11-cv-1735 (RWS/TIA), 2013 WL 1282330, at *11 (E.D. Mo. Feb. 8, 2013) (same); *Balde v. Astrue*, No. 10-C-0682, 2011 WL 3419371, at *17 (E.D. Wis. Aug. 4, 2011) ("'[W]hether the ALJ complied with the Appeals Council's remand order is not, in the final analysis, of independent importance. The only question properly before [the court] is whether the ALJ's decision (which the Appeals Council chose to leave undisturbed) is supported by substantial evidence.'") (quoting *Poyck v. Astrue*, 414 Fed. App'x 859, 861 (7th Cir. 2011)).

[4]     *Scott v. Barnhart*, 592 F. Supp. 2d 360, 371 (W.D.N.Y. 2009); *see also Dommes v. Colvin*, 225 F. Supp. 3d 113, 118 (N.D.N.Y. 2016) (noting that "reviewing courts have found that failure to comply with the Appeals Council's remand order may be grounds for remand") (citing *Mortise v. Astrue,* 713 F. Supp. 2d 111, 120–24 (N.D.N.Y. 2010), and *Gorman v. Astrue,* 08-cv-0251, 2009 WL 4884469, at *10 (N.D.N.Y. Dec. 10, 2009)).

### Remand Order

In the remand order, the Appeals Council explained that although alcohol abuse was found to be a severe impairment, the ALJ's first decision did not assess non-exertional mental limitations, evaluate the severity or effects of the impairment, incorporate any findings in the RFC that would correspond with a severe mental impairment, and left it unclear whether alcohol abuse would result in functional limitations that would preclude past relevant work. [R. 137.] The Appeals Council found that "further evaluation is warranted in accordance with Social Security Ruling 13-2p."[5] [R. 137.] The Appeals Council further noted that the SSA received post-hearing evidence a few days before the first decision was issued, which related to the period at issue and should have been considered, but the ALJ had not admitted it in the record or addressed it in the decision. [R. 137-38.] Based on these observations, the remand order instructed the ALJ to do take a number of actions.[6] Most relevant to the instant appeal, the Appeals Council ordered the following:

---

[5] The Appeals Council referenced Social Security Ruling 13-2p, *Titles II and XVI: Evaluating Cases Involving Drug Addiction and Alcoholism (DAA)*, 2013 WL 621536 (Feb. 20, 2013). This ruling, explains how the SSA evaluates cases where an individual is found to be disabled when considering all of his impairments, including any substance use disorder (commonly referred to as "DAA"). The DAA analysis is required because Congress has determined that a person is not entitled to disability benefits if drug abuse or alcoholism is a contributing factor material to disability. 42 U.S.C. § 423(d)(2)(C) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.")

[6] The Appeals Council also required the ALJ to enter all relevant evidence and documents into the record and to identify them on the list of exhibits. [R. 138.] The record clearly indicates the ALJ's compliance on this point and Mr. R raises no argument to the contrary. The ALJ was instructed to: reconsider Mr. R's RFC; evaluate whether the RFC precludes performance of his past relevant work; obtain additional evidence from a vocational expert if warranted by the expanded record; and if a finding of disability was deemed appropriate, address whether alcohol abuse is material to the finding of disability in accordance with Social Security Ruling 13-2p.

- Evaluate the claimant's mental impairment of alcohol abuse in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c).

[R. 138.]

### ALJ Thomas's Post-Remand Analysis

Section 416.920a provides a Psychiatric Review Technique ("PRT") for evaluating a mental impairment at each stage of the administrative review process. 20 C.F.R. § 416.920a(a). This PRT requires rating the degree of functional limitation caused by an impairment across four broad functional areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* § 416.920a(a)(c)(3).[7] These areas are rated on a five-point scale including: none, mild, moderate, marked, and extreme. *Id.* § 416.920a(c)(4). While an extreme degree of limitation "is incompatible with the ability to do any gainful activity," *id.*, a rating of "none" or "mild" in these categories will generally result in a determination that the impairment is not severe unless there is some other evidence in the record to suggest otherwise, *id.* § 416.920a(d)(1).

Here, ALJ Thomas complied with the Appeals Council's remand, evaluating Mr. R's alcohol abuse according to the special technique in 20 C.F.R. § 416.920a and documenting application of the technique in the decision. Specifically, the ALJ stated that Mr. R's history of alcohol abuse "has had no more than a minimal impact on his workability." [R. 14.] The ALJ determined that there was no evidence that Mr. R's alcohol use during the relevant timeframe "caused any consistent, ongoing difficulties in the claimant's ability to function." [R. 14.] Further, the ALJ noted Mr. R's testimony that his alcohol use has no impact on his functioning and "that he currently drinks 'very little.'" [R. 14.] The ALJ also reasoned that the absence of any treatment for

---

[7] The ALJ's second decision was rendered on January 10, 2017, seven days before § 416.920a(c)(3) was amended to redefine the four broad functional areas for the special technique as follows: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Compare* 20 C.F.R. § 416.920a(c)(3) (effective Jan. 17, 2017), *with* 20 C.F.R. § 416.920a(c)(3) (effective June 13, 2011 through Jan. 16, 2017). The ALJ properly applied the version of the rule that was in effect at the time of his decision.

alcoholism, lack of criminal or legal problems related to alcohol use, and lack of evidence that alcohol was a significant factor in exacerbating any mental health symptoms supported his conclusion. [R. 14.] In addition, the ALJ rated each of the first three functional areas as having only "mild" limitations and found no episodes of decompensation. [R. 14.] As a result, the ALJ determined that Mr. R's history of alcohol abuse was not a severe impairment. [R. 14.] The ALJ's post-remand analysis conformed to the Appeals Council's instructions. Mr. R has, therefore, failed to show that the ALJ failed to comply with the remand order.

Moreover, Mr. R's assertion that the ALJ ignored evidence concerning his alcohol use essentially suggests that the record does not support the ALJ's conclusion of non-severity. Based on a review of the entire record, the Court disagrees. Substantial evidence supports the ALJ's finding that Mr. R's alcohol use was not a severe impairment. For example, the ALJ correctly observed that there is no evidence in the record that Mr. R ever sought or obtained treatment for alcohol abuse. Some records indicate that he should decrease his consumption of alcohol to help control his diabetes or avoid negative effects when combined with pain medication [R. 890–93, 955, 1188], but throughout the record Mr. R did not report that he experienced functionally limiting symptoms as a result of his alcohol consumption. And none of his medical providers assessed any functional or work-related limitations based on Mr. R's use of alcohol.[8]

Mr. R points to a hospitalization for an overdose and a Rule 25 assessment as an indication that the ALJ erred in evaluating the record concerning alcohol consumption. [Pl.'s Mem. at 22.] However, the records associated with his hospitalization and subsequent chemical dependency evaluation do not undermine the ALJ's conclusion. Mr. R appeared in the emergency room in August 2016, after he took pain medications around midnight following an episode of drinking with friends in the afternoon.

---

[8] The question of severity of an impairment comes down to whether it significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 916.922(a). "Basic work activities" relating to mental abilities include such things as the capacity to understand, carry out, and remember simple instructions, use judgment, and respond appropriately to others in a work settings. *Id.* § 416.922(b)(3)–(5). None of the medical records that mention Mr. R's alcohol consumption question his capabilities in these areas, indicating that the impairment does not significantly limit his mental ability to do basic work activities.

10

[R. 1283–85.] But even on that occasion, when he was interviewed by the emergency room medical staff, he was able to respond appropriately to all questions and was discharged home the same day in good condition. [R. 1285.] Not long thereafter, in October 2016, Mr. R received a diagnosis of non-dependent alcohol abuse when he was warned about combining opioids with consumption of alcohol, yet indicated he did not want to discontinue drinking. [R. 1101–15.] His providers determined that he should be referred for a chemical dependency evaluation [R. 1115], and on November 2, 2016, he received a Rule 25 assessment at St. Joseph's Hospital in St. Paul [R. 1306–21]. Tellingly, the Licensed Alcohol and Drug Counselor who performed the assessment did not diagnose any alcohol use disorder. [R. 1318.] She determined that Mr. R did "not meet the criteria for problematic behavior or treatment services at [that] time."[9] [R. 1320.] These records fully support the ALJ's conclusion that Mr. R's alcohol use was not a severe impairment because the evidence does not show more than a minimal impact on basic work activities.

### B.     Mental Impairments and the RFC Determination

Michael R. also argues that the ALJ erred by failing to include any mental limitations in the RFC determination. [Pl.'s Mem. at 26–30.] He claims that the ALJ should have adopted some mental restrictions on the type of work he is able to perform because the ALJ found "mild" limitations in the functional areas evaluated under the PRT. [*Id.* at 27–28.] Mr. R asserts that the ALJ improperly evaluated several pieces of evidence concerning his history of mental-health issues. [*Id.* at 28–30.] Again, the Court disagrees.

---

[9]     Mr. R asserts that this conclusion was based off of significantly underreported alcohol consumption because the Rule 25 Assessment report indicates he was consuming 1–2 drinks, twice per week. [Pl.'s Mem. at 20 & n.2.] However, the Court notes that Mr. R's reported consumption of a few drinks while playing bingo or watching football each week was confirmed by two collateral sources (his brother and girlfriend). [R. 1320–21.] Indeed, there are numerous records that suggest Mr. R's alcohol consumption was much lower than suggested in his written argument. [*Compare* Pl.'s Mem. at 19–20 (suggesting drinking five times per week, 3–7 beers per occasion), *with* R. 1034–96 (records from Oct. 2015 through June 2016 at Apple Valley Medical Center indicating alcohol consumption was between 1–2 drinks per week).]

11

### The ALJ's Mental Health Discussion

ALJ Thomas's opinion discusses evidence concerning Mr. R's mental health in two places: first, when determining that his depression was not a severe impairment; and second, when explaining the basis for the RFC determination. In the step-two analysis, the ALJ noted that the medical evidence, including the testimony of Dr. Lace, showed "diagnoses of major depressive disorder versus dysthymic disorder." [R. 13.] However, the ALJ found that Mr. R was only prescribed Zoloft by his primary care physician and there was no evidence of other mental-health treatment. [R. 13–14.] ALJ Thomas also noted a "comprehensive medication list compiled in October 2016 makes no mention of any medications for depression." [R. 14.] Based on these observations, the ALJ determined that "the level of mental health care has not been consistent with a severe mental impairment." [R. 14.] The ALJ further supported this finding by referencing: (1) an October 2013 consultative psychological examination that found Mr. R had a mild affective disorder; (2) mental status examinations that were unremarkable; (3) daily activities that showed no significant mental impediments; and (4) evidence of a negative depression screening. [R. 14.]

In the context of the RFC determination, ALJ Thomas noted that the psychologists who reviewed Mr. R's medical records at the initial and reconsideration levels found that he had no more than mild restrictions in the relevant functional areas. [R. 21.] The ALJ noted that these determinations were consistent with Mr. R's mental status examinations, the minimal mental-health treatment, and Mr. R's independence and extensive daily activities. [R. 21.] The ALJ gave these reviewers' opinions great weight in determining the RFC. [R. 21.] However, the ALJ discounted the evaluation of consultative psychologist Dr. Robert Lopno in one respect. Dr. Lopno conducted a psychological evaluation in October of 2013, and concluded that Mr. R would have some reduced ability to concentrate and would have a slightly compromised ability to interact with supervisors and coworkers. [R. 21.] However, the ALJ gave Dr. Lopno's opinion little weight because it was inconsistent with Dr. Lopno's own mental status examination and the overall medical records. [R. 21–22.]

### RFC Supported by the Record

The Court finds that the ALJ's decision to exclude any mental-health restrictions from the RFC is supported by substantial evidence. Most notably, the ALJ's decision is supported by the absence of any specialized treatment for mental-health issues throughout the relevant period. Aside from receiving prescriptions for Zoloft and Cymbalta from his primary care physician, Mr. R did not receive any other significant mental-health treatment. He did not regularly see a therapist or receive care from a psychiatrist or psychologist. Mr. R's medical records do not contain any clinical assessments by his treating doctors that his depression symptoms translate into functional limitations. Under these circumstances, the ALJ did not err in failing to include additional functional limitations concerning Mr. R's mental health in the RFC finding. *Thomas v. Berryhill*, 698 Fed App'x 323, 323–34 (8th Cir. 2017) (per curiam) (affirming the ALJ's conclusion that depression was not a severe impairment where the record contained scant evidence of mental-health treatment, therapy progress notes showed no symptoms that would interfere with basic work activities, and the claimant's activities of daily living did not show more than a minimal impact from depression); *Kirby v. Astrue*, 500 F.3d 705, 708–09 (8th Cir. 2007) (affirming the ALJ's conclusion that the claimant did not have a severe mental health impairment where the initial claim did not include any psychiatric basis for disability and there was no formal treatment by a psychiatrist, psychologist, or other mental-health professional for any long-term period).

Mr. R asserts that his "mental impairments, in combination with pain and fatigue from other impairments, must effect his mental capabilities to some degree," and that the ALJ's finding of no mental limitations in the RFC "is virtually impossible given the ALJ's finding that [he] did indeed have medically determinable impairments with associated symptoms." [Pl.'s Mem. at 27.] Mr. R essentially contends that the ALJ was required to include some mental-health limitations in the RFC because the ALJ found, at step two of the sequential evaluation, that Mr. R has mild limitations in the same functional areas that must be evaluated in setting an RFC. However, several courts have rejected this argument.

> [T]he limitations identified in the 'paragraph B' criteria are used to rate
> the severity of mental impairments at Steps Two and Three of the

sequential evaluation process; they are not an RFC assessment. See SSR 96–8p, 1996 WL 374184 (July 2, 1996). The mere fact that an individual has a medically determinable impairment does not necessarily mean that the impairment restricts the individual's ability to function in the workplace.

Dobbs v. Berryhill, No. 6:16-cv-03296 (DGK/SSA), 2017 WL 4122435, at *4 (W.D. Mo. Sept. 14, 2017); Hosch v. Colvin, No. C15-2014-CJW, 2016 WL 1261229, at *6 (N.D. Iowa Mar. 30, 2016) ("Even if the ALJ had not included any mental limitations in his RFC finding, however, he still would not have erred because moderate limitations in the "paragraph B" criteria do not necessarily require mental limitations in the RFC assessment."); Flint v. Colvin, No. 13-CV-1220 PAM/SER, 2014 WL 2818665, at *27 (D. Minn. June 23, 2014) (holding that an "ALJ [is] not required to include [a] 'paragraph B' finding of moderate limitations in concentration, persistence, or pace in [an] RFC determination"). Here, the ALJ explained why no work-related functional limitations were included in Mr. R's RFC, and the ALJ's determination is supported by substantial evidence. In light of the foregoing persuasive caselaw and the ALJ's well-supported RFC finding, the Court concludes that the ALJ was not required to include functional limitations in the RFC regarding Mr. R's mental abilities.

Mr. R also suggests that the ALJ erred in relying on Dr. Lace's opinion that no mental-health limitations were supported because Dr. Lace mistakenly testified that Mr. R was never referred for specialized mental-health treatment. [Pl.'s Mem. at 29.] Mr. R was referred for mental-health treatment just prior to his alleged onset date. Nonetheless, under the circumstances, the Court finds no error in the ALJ's reliance on Dr. Lace's opinion. On November 6, 2012, approximately two months before Mr. R alleged that he became unable to work, he saw Dr. Thomas King, his primary care physician, for a reassessment of depression. [R. 483.] Dr. King noted that Mr. R started on a 20mg dose of Citalopram in July of 2012, but Mr. R indicated that his symptoms of depression had slowly gotten worse. [R. 483.] Dr. King increased his medication to a 40mg dose and recommended that Mr. R attend behavioral health counseling. [R. 483.] However, during a follow-up visit on December 3, 2012, Dr. King noted that Mr. R had not made an appointment with a behavioral health counselor and again instructed him to follow through with the recommendation. [R. 482.] There is no evidence in the record indicating that Mr. R complied with his doctor's recommended treatment. This reality undermines his claim that his depression symptoms cause work-related functional

14

limitations that would preclude him from employment. *See, e.g., Hensley v. Colvin*, 829 F.3d 926, 935 (8th Cir. 2016) (concluding that "the ALJ could reasonably conclude that Hensley's repeated failure to attend a prescribed course of treatment was evidence that his mental impairment was less disabling than Hensley claimed" where there was no evidence that the noncompliance was a medically determinable symptom of a mental illness); *see also Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.") (internal quotation marks omitted). In sum, the Court concludes that the ALJ's decision not to include mental-health related limitations in the RFC is supported by substantial evidence in the record as a whole.

### C.     Evaluation of Symptoms

Finally, Mr. R asserts that the ALJ erred while evaluating his symptoms under SSR 16-3p and *Polaski v. Heckler*, 739 F.2d 1230 (8th Cir. 1984). [Pl.'s Mem. at 22–26.] Social Security Ruling 16-3p provides guidance about how the SSA evaluates a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. Social Security Ruling 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029, at *1 (SSA Mar. 16, 2016). This ruling makes clear that ALJ's should no longer focus on a claimant's "credibility," but should instead evaluate subjective symptoms based on all of the evidence in a claimant's record. *Id.* at *2. In addition, the ALJ should consider the following factors, which are also found in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

   1. Daily activities;

   2. The location, duration, frequency, and intensity of pain or other symptoms;

   3. Factors that precipitate and aggravate the symptoms;

   4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

   5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

> 6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at \*7. These factors are essentially the same as those identified by the Eighth Circuit as relevant to evaluating a claimant's credibility. *See Polaski*, 739 F.3d at 1322 (listing the same factors reflected in SSR 16-3p for assessing a claimant's "credibility"). As before, an ALJ may not disregard a claimant's subjective statements merely because the objective medical evidence does not support the degree of impairment alleged. *See* SSR 16-3p, 2016 WL 1119020, at \*5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment alleged by the individual."); *see also Kaeder v. Berryhill*, No17-cv-1858 (HB), 2018 WL 4286412, at \*3 (D. Minn. Sept. 7, 2018) ("[A]n ALJ may not rest a credibility determination solely on the lack of objective medical evidence.").

Although Mr. R argues that the ALJ erred in several ways when evaluating the severity of his symptoms, the Court finds that the ALJ's decision is supported by substantial evidence for the following four reasons. First, Mr. R's challenge to the ALJ's decision invites the Court to reweigh the evidence in the administrative record and reach a different conclusion. [*See* Pl.'s Mem. at 23 (arguing that the ALJ erred in finding no limitations in the RFC despite degree of functioning reflected in daily activities); *id.* at 23–24 (arguing that the "ALJ gave little credit to [his] long history of pain").] The Court declines this invitation to place itself in the shoes of the ALJ because it is inconsistent with the applicable deferential standard of review. *See Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016) (rejecting the claimant's argument that the ALJ erred in finding he was not disabled based on, among other things, his wide range of daily activities because the court's role was not to reweigh the evidence before the ALJ); *Agan v. Astrue*, 922 F. Supp. 2d 730, 773–74 (N.D. Iowa 2013) ("The court does not reweigh the evidence or review the factual record *de novo*").

Second, despite Mr. R's argument that the ALJ failed to discuss evidence regarding his work history, the Court finds no error. [*See* Pl.'s Mem. at 23 (arguing that

16

the ALJ failed to discuss Mr. R's prior work record, and instead noted that Mr. R's last job ended for reasons other than health problems).] The ALJ is not required to mention every piece of evidence in a written decision denying a disability claim. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Nor is the ALJ required to explicitly discuss each of the *Polaski* factors in assessing subjective assertions of symptom severity. *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005). It is unsurprising that the ALJ's opinion would omit discussion of certain discrete pieces of evidence. The administrative record in this case is over 1,300 pages long and includes nearly 1,000 pages of medical records alone. And the ALJ's observation that Mr. R did not leave his last job because of health problems, in fact, supports the decision to discount Mr. R's statements that his symptoms are so severe he is unable to work. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (finding no error in the ALJ's evaluation of the claimant's statements regarding the severity of symptoms where "she ceased employment at the same time she became the primary care giver to her grandchild").

Third, Mr. R has not shown that there was an absence of substantial evidence to support the ALJ's evaluation of the relevant factors. For example, though Mr. R suggests that the ALJ erred in evaluating his daily activities, [Pl.'s Mem. at 23], substantial evidence supports the ALJ's observations on that subject. [*See* R. 19–20 (ALJ decision discussing wide range of daily activities consistent with the RFC); R. at 609–10 (Dr. Lopno's report of consultative examination discussing daily activities, including Mr. R's relationship with girlfriend, ability to independently engage in self-care, and ability to prepare meals); R. at 352–57 (Function Report discussing daily activities consistent with ALJ opinion).]

Finally, the Court is not persuaded that reversal is required because ALJ Thomas was "highly mistaken in his characterization of the claimant's depression medication." [Pl.'s Mem. at 24.] Specifically, Mr. R argues that the ALJ erred in finding that he was only ever given a prescription for Zoloft and that in October 2016, a comprehensive list of medications did not include any medications to treat mental-health issues. [Pl.'s Mem. at 24.] There is evidence in the record demonstrating that Mr. R was taking Citalopram during at least the second half of 2012, before his alleged onset date, but was later switched to Zoloft. [R. 494–97 (progress note from 7/6/2012 indicating improvement of symptoms with Citalopram).] During 2014, his primary care provider

17

increased the dose of Zoloft he was taking from 50mg to 100mg. [R. 697–700 (progress note from 2/3/2014 noting intermittent depression symptoms and historical diagnosis of depression).] Progress notes from February and June 2016 indicate that Mr. R was taking Cymbalta, a drug that can be used to treat depression and anxiety, although depression screening was negative on both visits. [R. 1045–49, 1054–57.]

It is correct that the ALJ's discussion of Mr. R's mental-health medications does not include this more complete history. However, the Court finds this error to be harmless because the outcome would have been the same even if the ALJ had more fully described Mr. R's history with depression medication. *See Byes v. Astrue*, 687 F.3d 913, 917–18 (8th Cir. 2012) (noting that a claimant must show that an error is harmless by providing "some indication that the ALJ would have decided differently if the error had not occurred"). For all the reasons discussed above (*see* discussion, *supra*, Part II.B.), the Court finds that the ALJ adequately considered the entire course of Mr. R's mental-health treatment and complaints, including the absence of any specialized treatment, his own failure to comply with a recommendation that he obtain behavioral counseling, and the absence of any opinion evidence suggesting that his mental-health diagnoses caused any limitations in work-related functioning.[10]

### III.   Recommendation

Based on the foregoing, the Court recommends that Michael R.'s Motion for Summary Judgment [ECF No. 9] be **DENIED** and the Commissioner's Motion for Summary Judgment [ECF No. 12] be **GRANTED**.

Dated: June 11, 2019                                *s/ Katherine Menendez*
                                                   Katherine Menendez
                                                   United States Magistrate Judge

---

[10]   Mr. R also suggests that the ALJ erred in relying on the vocational expert's testimony that he could return to his past relevant work because the ALJ failed to include all of the limitations required in the RFC finding, and therefore, the hypothetical question presented to the expert was flawed. [Pl.'s Mem. at 31.] Because the Court finds no error with the ALJ's RFC determination, Mr. R is unable to show any error in the ALJ's reliance on the vocational expert's testimony. *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) ("Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies.") (citing *Porch v. Chater,* 115 F.3d 567, 572 (8th Cir. 1997)).

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.